IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NOCO COMPANY, | ) | CASE NO. 1:22-cv-01172 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | ) | |
| | ) | |
| ABC DEALS, INC., | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |

Before the Court is Defendant ABC Deals, Inc. ("ABC Deals")'s Motion to Transfer Venue to the Eastern District of New York. (Doc. No. 7.) Plaintiff NOCO Company ("NOCO") opposed, (Doc. No. 14), ABC Deals replied, (Doc. No. 16), and NOCO filed a sur-reply (Doc. No. 23.) For the following reasons, Defendant's motion is **GRANTED**.

## I. Facts

Plaintiff NOCO is an Ohio-headquartered company in the business of manufacturing and selling battery chargers, among other related products. (Doc. No. 1 at 2-3, ¶ 4.) NOCO's products are protected by various trademarks and copyrights. (*Id.* at 5-6, ¶¶18-24.) NOCO authorizes only specific resellers to resell its products and enters into contracts (reseller agreements) with those authorized resellers. (*Id.*, ¶¶ 24-25.) These reseller agreements prohibit bulk sales of NOCO products to wholesalers or unauthorized resellers and specify that any NOCO product warranties are valid only when the product is sold or resold by an authorized reseller. (*Id.* at 7, ¶¶ 29-30.)

Defendant ABC Deals is a corporation organized under New York law with its principal place of business in Brooklyn, New York. (Doc. No. 7-2 at 90, ¶¶ 2-3.) ABC Deals says that all its operations take place in, and its employees are located entirely within, New York state. (*Id.* at

91-92, ¶¶ 7-15.) ABC Deals markets and sells various products, including NOCO-branded battery chargers, to consumers via third party websites, such as Amazon and Wal-Mart (*Id.*, ¶ 4.)[1] ABC Deals does not have a reseller agreement in place with NOCO. (*See* Doc. 7-2 at 91, ¶ 7.)

NOCO alleges that on April 6, 2022, it became aware that ABC Deals was selling products that infringe NOCO's intellectual property rights, without NOCO's permission. (Doc. No. 1 at 3, ¶ 6; *id.* at 7, ¶ 31.) NOCO claims that ABC Deals solicits NOCO's authorized resellers, including those in Ohio, to sell NOCO products to ABC Deals in bulk. (*Id.* at 8, ¶¶ 33-35.) ABC Deals then resells NOCO's products without NOCO's authorization through third-party marketplaces, like Amazon and Walmart.com. (*Id.*) NOCO also claims that ABC Deals has also shipped products to Ohio customers, sometimes from distribution centers in Ohio, and received payments and returns from the same. (*Id.*, ¶¶ 37-40.)

On April 8, 2022, NOCO's counsel sent ABC Deals a letter, contending that ABC Deals was selling infringing products and violating NOCO's intellectual property rights. (*See* Doc. No. 1-3.) NOCO told ABC Deals to stop selling the infringing products and attached to the letter a waiver and release. (*Id.* at 31-33.) NOCO advised ABC Deals sign the waiver and release. (*Id.*) NOCO also informed ABC Deals of NOCO's relationships with authorized resellers. (*Id.*) ABC Deals continued to sell NOCO's unauthorized products. (Doc. No. 1 at 9, ¶ 46.)

On July 1, 2022, NOCO filed the instant case against ABC Deals. (Doc. No. 1.) NOCO alleges that for the purposes of the Lanham Act, the products sold by ABC Deals are materially different than those sold by NOCO and its authorized resellers because: (1) ABC Deals' resold

---

[1] Defendant ABC Deals does business as "ElectronicsClub" on Walmart.com. (Doc. No. 1 at 3, ¶ 5.)

products do not carry NOCO's warranty productions, because ABC Deals is not an authorized reseller; and (2) ABC Deals' customer service and products, including their quality controls, are inferior to NOCO's, as shown by customer reviews of ABC Deals on Walmart's website. (*Id.* at 10, ¶¶ 48-49.)

On October 21, 2022, ABC Deals moved to transfer the case pursuant to 28 U.S.C. § 1404(a), or in the alternative, dismiss for failure to state a claim upon which relief can be granted, *see* Fed. R. Civ. P. 12(b)(6). (Doc. No. 7.) NOCO opposed the motions separately. (Doc. Nos. 13, 14.) ABC Deals replied, (Doc. No. 16), and the Court granted leave for NOCO to file a sur-reply (Doc. No. 23.) The Court subsequently granted the parties' joint motion to stay discovery pending the motions to transfer or dismiss. (Doc. No. 22.)

## II. Legal Standard

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a). On a motion to transfer under § 1404(a), the moving party bears the burden of proving why a court should transfer the action. *LaCroix v. Am. Horse Show Ass'n*, 853 F. Supp. 992, 1000 (N.D. Ohio 1994). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Reese v. CNH America LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (quoting *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984)).

In considering a motion to change venue under § 1404(a), "a district court should consider the private interests of the parties, . . . as well as other public-interest concerns, . . . which come under the rubric of 'interests of justice.'" *Id.* (quoting *Moses v. Bus. Card. Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991)). The private interests of the parties include:

> "(1) the convenience to the parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (6) the cost of obtaining willing witnesses; [and] (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively."

*Id.* (citations & quotations omitted).

Public interest factors include: (i) the enforceability of the judgment; (ii) practical considerations affecting trial management; (iii) docket congestion; (iv) the local interest in deciding local controversies at home; (v) the public policies of the fora; and (vi) the familiarity of the trial judge with the applicable state law. *Id.* (*citing Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995)). "To examine [these factors], the district court must scrutinize the substance of the dispute between the parties to evaluate what proof is required and determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action." *Hefferan v. Ethicon Endo-Surgery*, 828 F.3d 488, 498 (6th Cir. 2016).

### III. Analysis

#### A. Available Alternate Forum

As a preliminary matter, the Court must consider whether the action could have been properly brought in the Eastern District of New York. *See* 28 U.S.C. § 1404(a) (allowing transfer to another court "where [the matter] may have been brought"). An action may have been brought in another court for purposes of 28 U.S.C. § 1404(a) if: (1) the court "could exercise original jurisdiction over the case;" (2) the court "would have personal jurisdiction of the defendants;" and (3) "venue would be proper in that court." *Zimmer Enters., Inc. v. Atlandia Imps., Inc.*, 478 F. Supp. 2d 983, 990 (S.D. Ohio 2007).

Neither party contends that venue would be improper in the Eastern District of New York. (*See* Doc. No. 14 at 150; Doc. No. 7-1 at 76.) Defendant ABC Deals is subject to

personal jurisdiction in New York, as it is a New York corporation headquartered and entirely located in Brooklyn, New York. (Doc. No. 7-2, at 90 ¶¶ 2-3.) And the Eastern District of New York could exercise original juridiction based on ABC Deals' alleged activity. *See* 28 U.S.C. § 1331. Thus, the Eastern District of New York is an available alternate forum.

### B. NOCO's Forum Choice

"In general, a plaintiff's choice of forum is entitled to substantial consideration in balancing the § 1404(a) factors." *Steelcase, Inc.*, 336 F. Supp. 2d at 720 (citations omitted). But where the forum has no connection with the matter in controversy, the plaintiff's choice of forum is entitled to significantly less weight. *United States v. Cinemark USA, Inc.*, 66 F. Supp. 2d 881, 889 (N.D. Ohio 1999). In determining a claim's connection to a forum, courts look to the location of the decision-making process that gave rise to the action, any ensuing activity, and its impacts. *See Ctr. for Env't Sci., Accuracy, & Reliability v. Nat'l Park Serv.*, 75 F. Supp. 3d 353, 357-58 (D.D.C. 2014).

At this stage, NOCO has not shown that its choice of forum is entitled to substantial consideration, because the center of the controversy is undetermined. NOCO alleges that ABC Deals solicited products from NOCO's Ohio authorized resellers, and then shipped unauthorized NOCO products to Ohio consumers. (Doc. No. 1 at 8, ¶¶ 33-40.) However, NOCO's complaint does not contain specific allegations locating the action in Ohio, nor has NOCO included documentary evidence in support of these allegations. For example, NOCO does not identify any Ohio consumers who were harmed by the material differences in products, nor does it identify any of the Ohio resellers who sold to ABC Deals.

While NOCO is headquartered in Ohio, its allegations focus on ABC Deals' supplying and shipping products – all from ABC Deals' New York City warehouse. (Doc. No. 7 at 72-73 (citing NOCO's corporate website); Doc. No. 7-2 at 91, ¶¶ 5-10.) The matter's locus is not

clearly Ohio, as NOCO claims. Thus, NOCO's forum choice receives less deference. *See Total Quality Logistics, LLC v. Medellin*, Case No. 1:22-cv-276, 2023 WL 3189897, at *3 (S.D. Ohio Mar. 17, 2023) (reasoning that while a state has an interest in its companies' disputes, other state had a stronger interest where conduct arose in that second state).

    C. **Private Factors**

On balance, the § 1404(a) factors strongly favor transferring the case to the Eastern District of New York.

The parties' relative convenience weighs in favor of transfer. The Eastern District of New York is closer to Defendant ABC Deals and its counsel, while this Court is more convenient for Plaintiff NOCO and its counsel. However, ABC Deals' president, Cheskel Mertz, avers that it is a small, family-run business. (Doc. No. 7-2 at 90, ¶ 3.) ABC Deals would have to slow down its operations for a trial in Ohio, because Mertz and his wife, two of ABC Deals' nine employees, would need to travel for the litigation. (*Id.* at 92, ¶ 16.) NOCO has not shown that it would be similarly burdened. And because assessing the convenience of the parties "requires consideration of their respective residence and abilities to bear the expense of trial in a particular forum," this factor weighs towards transfer. *U.S. ex rel. Kairos Scientia, Inc. v. Zinsser Co.*, No. 5:10-CV-383, 2011 WL 127852, at *6 (N.D. Ohio Jan. 14, 2011).

As for the convenience of witnesses, the Eastern District of New York is closer to witnesses associated with ABC Deals, while this District is closer to witnesses associated with NOCO. However, neither party identifies their witnesses with much specificity. While a party is not required to specifically provide the names of witnesses to be used in an action to establish inconvenience, they must provide enough information to enable the court to balance the parties' interests. *Dowling v. Richardson-Merrell, Inc.*, 727 F.3d 608, 615 (6th Cir. 1984).

For example, NOCO would have its corporate officers testify to the differences in quality controls between its own facilities and ABC Deals'.  (Doc. No. 14 at 152-53.)  However, these are party witnesses, and "it is the convenience of non-party witnesses, rather than employee witnesses . . . that is the more important factor and is accorded greater weight."  *Total Quality Logistics, LLC v. Alliance Shippers, Inc.*, Case No. 1:19-cv-1052, 2020 WL 5760704, at *3 (S.D. Ohio Sept. 28, 2020) (*quoting Brown Co. of Waverly, LLC v. Superior Roll Forming, Inc.*, No. 1:09-CV-802, 2009 WL 4251093, at *3 (W.D. Mich. Nov. 25, 2009)).  NOCO also likely plans to call consumers "in multiple jurisdictions, including Ohio," who purchased infringing products sold by ABC Deals.  (Doc. No. 14 at 153.)  But NOCO does not specify that these non-party consumer witnesses would be exclusively from Ohio.  Ohio is not a more convenient forum for this reason.  In comparison, ABC Deals contends that at least one New York-based independent non-party witness—its supplier—would be called to testify, and that compulsory process would not be available for this witness in Ohio.  (Doc. No.  7-1 at 78-79.)  The parties do not otherwise discuss process availability.  On balance, witness convenience favors ABC Deals.  The parties have not brief with specificity potential witnesses that would allow the Court to estimate whether the potential costs of witnesses favor NOCO or ABC Deals.

Finally, it is difficult to ascertain whether access to sources of proof weighs in favor of either party, because NOCO's general allegations do not allow the Court to extrapolate what proof would be required.  For example, NOCO alleges that ABC Deals' quality controls are materially different from NOCO's, but NOCO does not describe what those quality controls entail.  *Cf. AMF, Inc. v. Computer Automation, Inc.*, 532 F. Supp. 1335, 1340 (S.D. Ohio 1982) (affidavit and photographs of documentary evidence assisted court in balancing the "sources of proof" factor).  Sixth Circuit courts have held that the convenience of documentary evidence

receives only minor weight, and the parties here do not contend that the documentary evidence would pose a particular challenge. *See, e.g.*, *Picker Intern, Inc. v. Travelers Indem. Co.*, 35 F. Supp. 2d 570, 574 (N.D. Ohio, 1998). The parties debate whether in-person visits to ABC Deals' New York City warehouse will be required, either by experts or the jury. Given the unspecific allegations, the Court will not speculate on whether jurors may have to conduct an on-site view at this time. This factor is neutral. And the parties do not discuss the practical problems of trial apart from the factors already discussed.

### D. Public Factors

This case presents a question of New York law that ultimately warrants transfer to the Eastern District of New York.

"Where resolution of a diversity case requires application of state law, there is a legitimate interest in allowing the court that is most familiar with the applicable law to resolve the dispute." *Rothberg v. General Motors Corp.*, Case No. 1:92-cv-2180, 1994 WL 121634 (N.S. Ohio Jan. 13, 1994); *see also Rustal Trading US, Inc. v. Makki,* 17 F. App'x 331, 336 (6th Cir. 2001). Aside from ABC Deals' defense involving a New York state law, discussed below, this case's law is not unique or difficult. Plaintiff NOCO has brought trademark violation claims under the Lanham Act, the Ohio Deceptive Trade Practices Act, and common law, in addition to a common law claim for tortious interference with contract. (Doc. No. 1.) Although the Eastern District of New York is less familiar with Ohio law than this Court, that lack of familiarity has relatively little import regarding Plaintiff's claims. The Ohio Deceptive Trade Practices act is substantially similar to the Lanham Act, and courts have stated that cases interpreting the Lanham Act are relevant to analysis of Ohio Deceptive Practices Act claims. *See Antioch Co. v. Pioneer Photo Albums, Inc.*, No. C-3-99-27, 2000 WL 988249, at *5 (S.D. Ohio Mar. 13, 2000) (gathering cases). *See also Sacklow v. Sacks Inc.*, 377 F. Supp. 3d 870, 879-80 (M.D. Tenn.

2019) (analogous state consumer protection laws are "the types of claims that federal courts routinely and skillfully consider"); *Grubb v. Day to Day Logistics, Inc.*, No. 2:14-CV-01587, 2015 WL 4068742, at *20 (S.D. Ohio July 2, 2015) (Ohio court able to apply familiar negligence principles of Virginia state law). Thus, a New York court could competently apply the Ohio or New York laws relevant to this action.

It is only where another state's controlling law is "unclear, unsettled, [and] difficult" where this factor weighs towards transfer. *AMF, Inc. v. Comput. Automation, Inc*, 532 F. Supp. 1335, 1347-48 (S.D. Ohio 1982). *See also Cincinnati Ins. Co. v. O'Leary Paint Co., Inc.*, 676 F. Supp. 2d 623 (W.D. Mich. 2009). Here, ABC Deals' invocation of New York General Business Law § 369-b as a defense poses just that: an unclear, unsettled, and difficult question of law, the resolution of which is best left for New York courts.

NOCO brings claims alleging unfair competition under 15 U.S.C. § 1225(a); trademark infringement under 15 U.S.C. §§ 1114 and 1125(a)(1)(a); and violations of the Ohio Deceptive Trade Practices Act, R.C. § 4165.02 (collectively, the "trademark claims").[2] (*See* Doc. No. 1.) Trademark law contains a "first sale" exception, which is a defense to claims of infringement. *Brilliance Audio, Inc. v. Haights Cross Communications, Inc.*, 474 F.3d 365, 369 (6th Cir. 2007). Under the first sale exception, resale by the first purchaser of the original trademarked item is generally neither trademark infringement nor unfair competition. *Id.* This is because "trademark law is designed to prevent sellers from confusing or deceiving consumers about the origin or

---

[2] NOCO also brings a claim alleging tortious interference with contract, (Doc. No. 1 at 15-16, ¶¶ 79-85), and trademark dilution under 15 U.S.C. § 1125(c), (Doc. No. 1 at 19-20, ¶¶ 103-10). Because material differences in products is not an element of those claims, G.B.L. § 369-b is not relevant, and discussion of it is omitted here.

make of a product, which confusion ordinarily does not exist when a genuine article bearing a true mark is sold." *Id.* (quotations and citations omitted).

However, "when an alleged infringer sells trademarked goods that are *materially different* than those sold by the trademark owner," the first sale exception does not apply. *Id.* (quotations and citations omitted). To be material, a difference "must be one that consumers consider relevant to a decision about whether to purchase a product." *Id.* "But, because a myriad of considerations may influence consumer preferences, the threshold of materiality must be kept low to include even subtle differences between products." *Id*. (citations and quotations). NOCO alleges that the infringing products sold by ABC Deals are materially different for two reasons: (1) the infringing products lack the same quality controls and customer service as NOCO; and (2) the infringing products do not come with NOCO's warranty. (Doc. No. 1 at 13, ¶¶ 66-67.)

Defendant ABC Deals raises New York General Business Law § 369-b as a defense to NOCO's claims of material difference. (Doc. No. 7-1 at 79, 84.) General Business Law § 369-b provides that a manufacturer may not disclaim product warranties for the sole reason that the product is sold by an unauthorized retailer, as NOCO alleges here.[3] ABC Deals claims that because of this law, the NOCO products it sells cannot be "materially different' based on lack of warranty under the Lanham Act, because NOCO cannot disclaim its warranties for its products sold by ABC Deals. (Doc. No. 12 at 124.)

---

[3] The statutory section provides:

> "A warranty or guarantee of merchandise may not be limited by a manufacturer doing business in this state solely for the reason that such merchandise is sold by a particular dealer or dealers, or that the dealer who sold the merchandise at retail has, since the date of the sale, either gone out of business or no longer sells such merchandise. Any attempt to limit the manufacturer's warranty or guarantee for the aforesaid reason is void."

N.Y. Gen. Bus. Law § 369-b (McKinney 2023).

Thus, the Court retaining this case would likely have to determine whether G.B.L. § 369-b applies as a defense to NOCO's claims. That Court would have to determine whether the statute can be invoked as an affirmative defense to a trademark infringement claim. Courts examining § 369-b's role as an affirmative defense have acknowledged that such a question "cannot [be] resolve[d] on a motion to dismiss," *Bel Canto Design, Ltd. v. MSS HiFi, Inc.*, No. 11 Civ. 6553 CM, 2012 WL 2376466, at *17 (S.D.N.Y. June 20, 2012), or have declined to reach the issue, *see Monahan Products LLC v. Sam's East, Inc*, 463 F. Supp. 3d 128 (D. Mass. 2020).

The retaining Court may also have to clarify the jurisdictional reach of G.B.L. § 396-b. A careful examination has returned little guiding precedent discussing G.B.L. § 396-b's scope. One court, in a non-binding decision, has held that G.B.L. § 369-b applies equally to consumers located in and outside of New York, governing all consumer purchases made "via a New York transaction." *See Bel Canto Design, Ltd. v. MSS HiFi, Inc.*, 837 F. Supp. 2d 208, 228 (S.D.N.Y. 2011). In its reasoning, the *Bel Canto* court noted that the territorial limits of G.B.L. § 369-b "presents an issue of first impression" for New York law and found that it had to "carefully predict how that question would be resolved by the New York Court of Appeals." *Id.*

It strikes the Court as particularly appropriate for a New York court to be positioned to determine which, if any, NOCO products resold by ABC Deals are "New York transactions" potentially subject to G.B.L. § 369-b, regardless of whether NOCO was a New York company, or where NOCO's products were ultimately delivered. Accordingly, this public interest factor weighs strongly in favor of transfer. *See, e.g.*, *Barak v. Zeff*, 289 F. App'x 907, 914 (6th Cir. 2009) (no abuse of distraction where district court explained with specificity why application of Spanish law weighed in favor of alternative forum for *forum non conveniens* analysis); *Care*

*One, LLC v. NLRB*, Case No. 23-3221, 2023 WL 4156859, at *6 (D.N.J. June 23, 2023) (transfer advanced judicial economy when complex legal issue was resolved in other forum).

Other public interest factors do not disturb this conclusion. Yes, court congestion favors this Court retaining the matter. The most recent Federal Judicial Caseload Statistics show that the median time from filing to disposition in civil cases was 9.1 in the Northern District of Ohio, and 5.5 in the Eastern District of New York. *See Combined Civil and Criminal Federal Court Management Statistics—Comparison Within Circuit—During the 12-Month Period Ending March 31, 2023*, United States Courts, (https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2023/03/31-3) (last accessed Jan. 30, 2024). However, the Eastern District of New York has almost three times as many civil cases per judge (581) than the Northern District of Ohio (233). *Id.* Therefore, the docket congestion analysis shows that the Northern District of Ohio is slower to dispose of cases, but the Eastern District of New York is much more congested.

And, when a company is incorporated in a state, there can sometimes be a compelling public interest in deciding a related controversy at its home forum. *North v. McNamara*, 47 F. Supp. 3d 635, 648 (S.D. Ohio 2014). However, Ohio's interest is weighed against New York's interest in seeing that its own courts interpret New York consumer protection statutes properly. As a result, this factor weighs in favor of transfer. And, the parties do not draw the Court's attention to any of the remaining public factors, such as enforceability or the practical considerations of trial management. New York state's interests in interpreting § 369-b warrants transfer.

## IV. Conclusion

For these reasons, Defendant's Motion to Transfer Venue to the Eastern District of New York pursuant to 28 U.S.C. § 1404(a) is **GRANTED**.  Defendant's Motion to Dismiss (Doc. No. 7) is properly left for resolution by the transferee court.

Accordingly, the Clerk is directed to transfer this action to the United States District Court for the Eastern District of New York.

**IT IS SO ORDERED.**

**Date:**  February 8, 2024

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE